## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ANDREA S.,**[1]

       **Plaintiff,**

                         **Case No. 2:22-cv-6208**
    **v.**                      **Magistrate Judge Norah McCann King**

**CAROLYN COLVIN,**
**Acting Commissioner of Social Security,**[2]

       **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Andrea S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On April 4, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since December 1, 2018. R. 527, 541, 653–59. The application was denied initially and upon reconsideration. R. 567–72, 615–17. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Carolyn Colvin, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge ("ALJ"). R. 618–21. ALJ Scott Tirrell held a hearing on February 18, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 485–526. In a decision dated June 1, 2021, the ALJ concluded that Plaintiff's substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled had she stopped the substance use; the ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 108–25. That decision became final when the Appeals Council declined review on August 26, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 13, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On that same day, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4.  The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."  *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous

period of at least twelve months.

However, "[i]f the ALJ finds that the claimant is disabled, but there is medical evidence

that the claimant suffers from drug addiction or alcoholism, the ALJ must then determine

whether the addiction or alcoholism 'would . . . be a contributing factor material to the

Commissioner's determination that the individual is disabled.'" *Martin v. Comm'r of Soc. Sec.*,

547 F. App'x 153, 156 (3d Cir. 2013) (quoting 42 U.S.C. § 423(d)(2)(C)). The Court of Appeals

for the Third Circuit has explained how an ALJ must make this determination:

> The "key factor" is "whether we would still find [the claimant] disabled if [he]
> stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). In making this
> determination, the ALJ must evaluate which of the claimant's physical and mental
> limitations would remain if the claimant stopped using drugs or alcohol, and
> whether any of those limitations would be disabling. *Id*. § 404.1535(b)(2). If the
> ALJ determines that the remaining limitations would not be disabling, the ALJ must
> find that the claimant's drug addiction or alcoholism is a contributing factor material
> to the determination of disability. *Id*. § 404.1535(b)(2)(i). If the ALJ determines
> that the remaining limitations are disabling, the ALJ must conclude that the
> claimant is "disabled independent of [his] drug addiction or alcoholism and . . .
> [his] drug addiction or alcoholism is not a contributing factor material to the
> determination of disability." *Id*. § 404.1535(b)(2)(ii).

*Id*.; *see also Bowers v. Comm'r of Soc. Sec*., No. CV 16-6589, 2017 WL 4711470, at *3 (D.N.J.

Oct. 20, 2017) ("Social Security Ruling (SSR) 13–2p establishes the procedure used by ALJs

when evaluating drug addiction or alcoholism materiality. . . . First, the ALJ will 'apply the

sequential evaluation process to show how the claimant is disabled.' . . . Next, the ALJ will

'apply the sequential evaluation process a second time to document [drug addiction and

alcoholism] materiality . . . .'") (citations omitted).

Finally, the Third Circuit "has not yet determined which party bears the burden of proof

as to the materiality determination under 42 U.S.C. § 423(d)(2)(C)." *Martin*, 547 F. App'x at 156

n.2. "However, other Courts of Appeals have concluded that the burden rests with the claimant."

*Id.* (citing cases from the Courts of Appeals for the Fifth, Eighth, Ninth, and Eleventh Circuits); *McGill v. Comm'r of Soc. Sec.*, 288 F. App'x 50, 52 (3d Cir. 2008) (same); *Roberts v. Kijakazi*, No. 3:20-CV-01612, 2022 WL 1406924, at *3 (M.D. Pa. May 4, 2022) ("While it has not been directly addressed by the Third Circuit, this court and others have repeatedly held that it is the claimant who bears the burden of proving DAA materiality.") (collecting cases), *reconsideration denied*, No. 3:20-CV-01612, 2022 WL 19762096 (M.D. Pa. Nov. 4, 2022); SSR 13-2p, 2013 WL 621536, at *4 ("When we apply the steps of the sequential evaluation a second time to determine whether the claimant would be disabled if he or she were not using drugs or alcohol, *it is our longstanding policy that the claimant continues to have the burden of proving disability throughout the DAA materiality analysis*.") (emphasis added). Regardless of which party bears to burden of showing materiality, the ALJ must point to substantial evidence to support the DAA materiality finding. *See Martin*, 547 F. App'x at 157.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 51 years old on December 1, 2018, her alleged disability onset date. R. 527 At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since October 12, 2020, R. 110–11, explaining as follows:

> The claimant returned to work in October 2020. She earned $24,038 in the fourth quarter of 2020, which averages to about $8,000 per month, and testified in February 2021 she was still working full time (Ex. 6D, Test.). This exceeds the statutory monthly threshold for disqualifying substantial gainful activity (SGA), which was $1,260 in 2020 and $1,310 in 2021. Although counsel submitted a letter after the hearing in this case, describing a recent hospitalization (Ex. 19E), there is no evidence that she has stopped working due to her impairments, was significantly accommodated, or had impairment related work expenses that would bring her earnings under SGA levels. The claimant's representative's argument that this constitutes a trial work period is moot given the unfavorable determination on this claim.

> Earnings reported in 2019 would exceed the SGA threshold but are attributable to short term disability payments (Ex. 1F at 1).

8

> As there exists a period of a least twelve continuous months at issue in this case, this decision will continue through the remaining steps of the sequential evaluation process, addressing same.

*Id.*

At step two, the ALJ found that Plaintiff's status post traumatic brain injury, with intracranial hemorrhage in the left temporal lobe and post-concussion syndrome; alcohol use disorder; generalized anxiety disorder; and major depressive disorder with psychotic features were severe impairments. R. 11.  The ALJ also found that the following diagnosed impairments were not severe: hypertension, tachycardia, seizure, visual impairment, including floaters, left temporal intraparenchymal hemorrhage, status post right foot fractures, esophageal perforation, bibasilar atelectasis, epicondylitis of the left elbow, fracture of the right temporal bone, trochanteric bursitis of the right hip, sprain of the right index finger, and deQuervain's tenosynovitis of the left wrist, status post-surgery. R. 111.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 111–13.

At step four, the ALJ found that, based on all her impairments, including her substance use disorder, Plaintiff had the RFC to perform a full range of exertional work subject to various non-exertional limitations. R. 113–20.[4] The ALJ also found that this RFC did not permit the

---

[4] The ALJ specifically found that, considering all of Plaintiff's impairments, including her substance use disorder, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never work at unprotected heights or work with equipment or machinery involving exposed moving mechanical parts, or exposure to extreme cold or heat in terms of work equipment or materials; she can never operate a motor vehicle or operate heavy

performance of Plaintiff's past relevant work as a communication and equipment sales representative and composite work as actually performed at the light level as a sales manager and a communication and equipment sales representative. R. 119–20.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC based on all impairments, including Plaintiff's substance use disorder, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 120.

Because the ALJ found Plaintiff's impairments to include alcohol use disorder and found further that Plaintiff was disabled, the ALJ went on to determine whether that disorder was a material contributing factor to Plaintiff's disability. R. 121–25. Specifically at step two, the ALJ found that, if Plaintiff stopped her use of alcohol, her remaining impairments—*i.e.*, status post traumatic brain injury ("TBI"), with intracranial hemorrhage in the left temporal lobe and post-concussion syndrome; generalized anxiety disorder; and major depressive disorder with psychotic features—would cause more than a minimal impact on her ability to perform basic work activities and were therefore severe. R. 111 (identifying in the first analysis severe impairments, including alcohol use disorder), 121 (explaining further that "[t]here is evidence of some word finding difficulty during sobriety, which has been factored into the claimant's

---

equipment; she can understand, remember and carry out detailed but uninvolved instructions in the performance of simple, routine tasks; can sustain attention and concentration over an eight-hour work day, with customary breaks, on performing suc[h] tasks; can use judgment in making work related decisions commensurate with this same type of work; and can adapt to changes in routine work settings. Further, the claimant would likely be absent at least twice per month for psychological symptoms, and related treatment.

R. 113–14.

residual functional capacity" and that "[t]here is also evidence that the claimant remained depressed and anxious at points, and at times had some impairment to judgment and insight").

At step three, the ALJ found that, if Plaintiff stopped her substance use, she would not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 121–22.

At step four, the ALJ found that, if Plaintiff stopped her substance use, she would have the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations and that this RFC would still preclude the performance of her past relevant work. R. 122–24.[5]

At step five and relying on the testimony of the vocational expert, the ALJ found that, if Plaintiff stopped her substance use and considering her vocational profile and this RFC, there were jobs that existed in significant numbers in the national economy that she could perform. R. 124–25. The ALJ therefore found that Plaintiff's substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. R. 125. Accordingly, the ALJ concluded that, because her substance use

---

[5] The ALJ specifically found that, if she stopped her substance use, Plaintiff would have the following RFC:

> After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance use, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out detailed but uninvolved instructions in the performance of simple, routine tasks; can sustain attention and concentration over an eight-hour work day, with customary breaks, on performing suc[h] tasks; can use judgment in making work related decisions commensurate with this same type of work; and can adapt to changes in routine work settings.

R. 122.

disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. *Id.*

Plaintiff disagrees with the ALJ's finding that Plaintiff's alcohol use disorder was material to the determination of disability and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in finding that Drug Addiction or Alcoholism ("DAA") was material to the determination of disability. *Plaintiff's Brief*, ECF No. 6, pp. 25–28; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2. For the reasons that follow, this Court disagrees.

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). As previously noted, the "key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the ALJ] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). To clarify, "the question is not whether a plaintiff's disability disappears when alcohol use is removed from the picture; but, rather, whether given the severity of the remaining limitations as shown by the medical and other evidence of record," the claimant could perform a significant number of jobs in the national

economy. *McGill v. Comm'r of Soc. Sec. Admin.*, No. CIV.A. 2:13-1309, 2014 WL 3339641, at *5 (W.D. Pa. July 8, 2014) (citations omitted).

Where, as here, a claimant also suffers other mental disorders, SSR 13-2p advises that the Commissioner does "not know of any research data that [] can [be] use[d] to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." 2013 WL 621536, at *9. Accordingly, "[t]o support a finding that DAA is material, [there] . . . must . . . [be] evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, . . . adjudicators [] [cannot] rely exclusively on medical expertise and the nature of a claimant's mental disorder." *Id*.

SSR 13-2p further acknowledges the "wide variation in the duration and intensity of substance use among claimants with DAA" and therefore cannot "provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material in every case." *Id*. at *12 (explaining that the toxic effects of substance use may subside more quickly in some people than in others). Therefore, "[f]or some claimants, [the Commissioner] will be able to make a judgment about materiality based on evidence from a single, continuous period of abstinence, while in others [the Commissioner] may need to consider more than one period." *Id*. The Commissioner *may* also consider the circumstances under which abstinence occurs:

d. We *may* also consider the circumstances under which a period(s) of abstinence takes place, especially in the case of a claimant with a co-occurring mental disorder(s).

i. Improvement in a co-occurring mental disorder in a *highly structured treatment setting*, such as a hospital or substance abuse rehabilitation center, *may* be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. We *may* find that DAA is not material depending on

13

the extent to which the treatment for the co-occurring mental disorder improves the claimant's signs and symptoms. If the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), we will find that DAA is not material, as we explain in Question 7.

ii. A co-occurring mental disorder may appear to improve because of the structure and support provided in a highly structured treatment setting. As for any mental disorder, we *may* find that a claimant's co-occurring mental disorder(s) is still disabling even if increased support or a highly structured setting reduces the overt symptoms and signs of the disorder.

iii. Given the foregoing principles, a *single* hospitalization or other inpatient intervention is not sufficient to establish that DAA is material when there is evidence that a claimant has a disabling co-occurring mental disorder(s). We need evidence from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence. In addition, a record of multiple hospitalizations, emergency department visits, or other treatment *for the co-occurring mental disorder*—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention.

*Id*. at *12–13 (emphasis added) (footnotes omitted).

In the present case, at step three of the ALJ's first analysis and considering her substance use disorder, the ALJ found, *inter alia*, that Plaintiff had a marked limitation in the area of adapting of managing oneself, explaining as follows:

Generally, the claimant's husband alleges that she had difficulty tolerating stress but had no problems adapting to changes in routine (Ex. 4E). When the claimant is actively drinking, she makes suicidal statements, appears unable to control her impulses or maintain her own safety, and is frequently in the hospital for blackouts, seizures, physical injuries, or syncopal episodes. Insight and judgment were typically described as limited, impaired, or poor.

R. 113. At step four of the first analysis, the ALJ detailed record evidence regarding Plaintiff's impairments, including, *inter alia*, evidence that Plaintiff's husband brought her to the emergency room in February 2019 after she had been drinking for 24 hours, R. 115; evidence of cognitive testing conducted that same month and which showed an above average global

14

cognitive score, with above average memory and visual spatial faculties, but below average executive function and attention, *id*.; evidence that, when clinically sober, Plaintiff had a steady gait and had no suicidal ideation or tremors, *id*.; evidence that Plaintiff was brought to the emergency department by EMS in May 2019 after fainting at her son's baseball game and reporting that she had drunk more wine than usual the night before, *id*.; evidence that she was neurologically intact by the time she was evaluated in the hospital, *id*..; the May 2019 opinion of Jonathan Marchbian, M.D., a consultant for Genex, that Plaintiff had no neurological work-related limitations from December 2018 onward, R. 117; evidence that Plaintiff was admitted to the hospital in June 2019 for a fall that had occurred while walking her dogs after she had consumed two large boxes of wine and her blood ethanol level was later tested at 392, R. 115; evidence that Plaintiff agreed to intensive outpatient treatment but resisted a return to inpatient rehabilitation, *id*.; evidence that, in March 2020, Plaintiff was brought in to the hospital for seizure-like activity and a diagnosis of alcohol withdrawal syndrome, *id*.; the March 2020 opinion of Gerald Nathan, Ph.D., Plaintiff's treating psychologist, that Plaintiff had only minor memory and concentration issues during the time that he saw her, that all daily activities were normal when she was sober, and that he could not comment on her current functionality, R. 117; evidence that, in July 2020, Plaintiff was brought by EMS to the emergency room due to intoxication and making statements regarding self-destruction, R. 116; records indicating that she was prescribed Prozac by her primary care physician but was undergoing no other outpatient psychiatric care, and that her prior inpatient rehabilitation stays had not been helpful to her on an ongoing basis, *id*.; evidence that Plaintiff experienced another alcohol withdrawal seizure in September 2020, and was discharged on Keppra and a Librium taper and was referred to inpatient alcohol rehabilitation, *id*.

At step three of the ALJ's second analysis, the ALJ found, *inter alia*, that Plaintiff would have only a mild limitation in the area of adapting or managing oneself if her substance use were stopped, explaining as follows:

> When the claimant is abstinent from alcohol, she is still somewhat depressed and anxious at times, but also increasingly hopeful and forward-looking. She is obviously better able to look after her own health and safety, and perform her daily activities independently. Insight and judgment were both substantially increased when sober, according to mental status examinations.

R. 122.

At step four of the ALJ's second analysis, the ALJ considered—but found unavailing—Plaintiff's counsel's argument "that the record does not show sustained periods of sobriety sufficient to make a DAA material determination[.]" R. 123. The ALJ found that "[t]he record specifically shows a lack of hospitalizations or significant events during sobriety, and there are weeks-long swaths of treatment records during periods of abstinence substantiating her improved functionality." *Id*. The ALJ went on to consider, *inter alia*, that at Plaintiff's July 2019 intake to Seabrook House after detoxing in the hospital, she denied anxiety, depression, psychosis, paranoia, insomnia, suicidal thoughts, and mood swings, *id*.; Plaintiff transition to long term outpatient care through October 2019 and the absence of any further hospitalizations or injuries during that period, *id*.; evidence that, in August 2020, and immediately after a week-long hospital admission where Plaintiff reestablished sobriety, she began an intensive outpatient program, *id*.; evidence of mental status exams that indicated that Plaintiff had an anxious and depressed mood with an appropriate affect, coherent and intact thought processes, no psychotic thoughts, good insight and judgment, intact immediate, recent, and remote memory, and intact attention, concentration, language, and knowledge, and she denied issues with appetite, sleep, energy, suicidal ideation, feelings of worthlessness or guilt, concentration difficulty, or manic

symptoms, *id*.; descriptions of Plaintiff through August 2020 as engaged, appropriate, and insightful at group therapy meetings and an intact mental status examination at the end of the month, with a reported better mood and interviewing for jobs, *id*.

Additionally at step four in the second analysis, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not generally supported by the record when she was sober. *Id*. The ALJ explained that, even accounting for Plaintiff's ongoing anxiety and depression (and any potentially lingering effects of her traumatic brain injury, which the ALJ found were not objectively substantiated), the record established that Plaintiff "was mentally intact, without evident deficiencies that would preclude the performance of simple, routine work. This is supported by her objectively benign mental status examinations, intact daily activities, and the bulk of the opinion evidence." R. 123–24.

In short, this record reflects that the ALJ reasonably concluded that Plaintiff's alcohol use disorder was a contributing factor material to the disability finding. For example, the ALJ specifically found that it was Plaintiff's alcohol use disorder—rather than a mental impairment or traumatic brain injury—that precipitated Plaintiff's multiple trips to the emergency department, inpatient admissions, and outpatient programs. R. 115–16, 123. The ALJ also reasonably found that Plaintiff's DAA exacerbated her mental impairments: she had no suicidal ideation in February 2019 when she became clinically sober but was speaking of self-destruction when she was intoxicated in July 2020, R. 115–16, and the record reflects generally benign mental status examinations when she was sober, R. 115, 122–24. Plaintiff had weeks or months of sobriety or abstinence during which there is no evidence of hospitalizations, self-harm ideation, or other significant events, including, but not limited to, the five-month period prior to March 2020. R. 115, 123. Plaintiff's functioning improved with inpatient and outpatient alcohol

treatment. R. 115, 123. The ALJ credited, *inter alia*, the portion of Dr. Nathan's March 2020 opinion that all of Plaintiff's daily activities were normal when she was sober, as well as Dr. Marchbian's May 2019 opinion that Plaintiff had no neurological work-related limitations from December 2018 onward. R. 117. In the view of this Court, this record provides substantial evidence to support the ALJ's finding that Plaintiff's alcohol/substance use disorder was a contributing factor material to the determination of disability. *See Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88–89 (3d Cir. 2015) (finding that substantial evidence supported the ALJ's decision that the claimant's alcohol abuse was a contributing factor material to the disability finding where, *inter alia*, Plaintiff, even in the absence of substance abuse, had severe depression and anxiety, but that "alcohol aggravated those conditions, rendering [the claimant] unable to perform any work available in the economy" and that "[t]he treatment records and other evidence show that [the claimant] responded well to treatment and had more normal mental status examinations while sober"); *Sperring v. Saul*, No. CV 20-393, 2021 WL 2474437, at *3–4 (W.D. Pa. June 17, 2021) (finding that the ALJ "properly applied the DAA materiality analysis to the record in this case as to whether Plaintiff's other impairments improved to the point of nondisability in the absence of her DAA" where, *inter alia*, the "[m]edical evidence clearly shows the claimant experienced a significant increase in psychiatric symptomology with alcohol abuse" and that "psychological records indicate improvement in symptoms and functionality when the claimant was in reported remission from substance abuse") (internal quotation marks omitted); SSR 13-2p, 2013 WL 621536, at *12 ("Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated."); *cf. McGill*, 288 F. App'x at 52–53 (finding that the record

18

supported the ALJ's conclusion that the claimant's mental impairments were severe only when they coincided with DAA as the "vast majority" of the claimant's hospital visits "involved drug overdoses, drug-seeking behavior, or both" and that "[i]n contrast, there is little, if any, evidence of severe depression or anxiety independent of DAA").

Plaintiff, however, challenges the ALJ's conclusion in this regard, arguing first that the ALJ erred in finding that Plaintiff's mental impairments improved when she was sober because the ALJ wrongfully relied on evidence reflecting Plaintiff's purported improvement while in a "highly structured treatment setting." *Plaintiff's Brief*, ECF No. 6, pp. 26–27 (citing, *inter alia*, SSR 13-2p); *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2. The Court is not persuaded that this issue requires remand. As a preliminary matter, SSR 13-2p provides that the ALJ "*may* also consider[,]" SSR 13-2p, 2013 WL 621536, at *12, but is not required to consider, "the circumstances under which a period(s) of abstinence takes place[.]" *Id*. In any event, and setting aside this permissive language, the ALJ also considered that Plaintiff's alcohol use disorder— rather than a co-occurring mental disorder—was the reason for several emergency department visits, inpatient admissions, and outpatient treatment in, *e.g.*, February 2019, R. 115; May 2019, *id*.; June 2019, *id*.; July 2019, R. 123; March 2020, R. 115; July 2020, R. 116; August 2020, R. 123; and September 2020, R. 116. Moreover, the ALJ expressly noted that Plaintiff denied anxiety, depression, psychosis, paranoia, insomnia, suicidal thoughts, and mood swings upon intake to the Seabrook House in July 2019 after detoxing in the hospital. R. 123. The ALJ further noted that, although Plaintiff received Prozac from her primary care physician, she had not undergone any other outpatient psychiatric care. R. 116. In addition, as noted above, the ALJ considered the "lack of hospitalizations or significant events during sobriety, and there are weeks-long swaths of treatment records during periods of abstinence substantiating her improved

functionality." R. 123; *see also* R. 115 (reflecting, *inter alia*, a period of abstinence of approximately five months). Based on this record, the Court cannot say that the ALJ improperly considered Plaintiff's co-occurring mental disorders when concluding that her alcohol use disorder was a contributing factor material to the disability decision.

Plaintiff next argues that the record does not contain periods of abstinence that were long enough to demonstrate that she functions well without active alcohol use. *Plaintiff's Brief*, ECF No. 6, pp. 27–28; *Plaintiff's Reply Brief*, ECF No. 13, p. 2. Plaintiff specifically argues that there was no period of sobriety longer than six months and that even weeks or months of sobriety "might not be long enough" to evaluate Plaintiff's functioning in the absence of alcohol use. *Plaintiff's Reply Brief*, ECF No. 13, p. 2 (internal quotation marks and citations omitted). Plaintiff's argument is not well taken. As an initial matter, this Court has already noted that SSR 13-2p has explained that no specific number of periods of abstinence—or duration of each abstinence period—is required when considering whether DAA is material. SSR 13-2p, 2013 WL 621536, at *12 ("[T]here is a wide variation in the duration and intensity of substance use among claimants with DAA, and there are wide variations in the interactions of DAA with different types of physical and mental disorders. For these reasons, *we are unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material in every case*.") (emphasis added). Although Plaintiff points to cases that she believes support her argument in this regard, those cases fall outside this circuit and are therefore not binding on this Court. *See Plaintiff's Reply Brief*, ECF No. 13, p. 2 (citations omitted). To the extent that Plaintiff insists there was not a sufficient number and/or length of period(s) of abstinence to separate the restrictions flowing from her mental disorders and her substance use

disorder, that argument is unavailing for the reasons already explained in the Court's analysis of the record evidence.

Accordingly, based on this record, the Court cannot conclude that the ALJ committed reversible error when he found that Plaintiff's alcohol use disorder was a contributing factor material to the finding of disability.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


**IT IS SO ORDERED.**


Date:  December 6, 2024                    _____*s/Norah McCann King*_____
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE